MICHAEL J. HASSEN (Bar No. 124823)
REALLAW, APC
mjhassen@reallaw.us
1981 N. Broadway, Suite 280
Walnut Creek, CA 94596
Telephone: (925) 359-7500
Facsimile: (925) 557-7690

Attorneys for Plaintiff JOSE GUZMAN,
individually and on behalf of all others
similarly situated,

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| JOSE GUZMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RLI CORP., RLI INSURANCE COMPANY, and Does 1 through 10,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND VIOLATIONS OF THE STORED COMMUNICATIONS ACT, THE ELECTRONIC COMMUNICATIONS PRIVACY ACT, INVASION OF PRIVACY, AND CALIFORNIA'S CONSUMER PRIVACY ACT OF 2018** |

Plaintiff Jose Guzman, individually and on behalf of all others similarly situated, complains and alleges against Defendants RLI Corp. and RLI Insurance Company (collectively "Defendants" or "RLI") as follows:

## INTRODUCTION

1.      Plaintiff and each member of the putative class faces immediate and irreparable injury due to RLI's breach of a federal court order requiring RLI to maintain in strictest confidence the login credentials to Libre by Nexus's computer systems and the confidential information regarding undocumented immigrants stored therein.

*Reallaw*

2.    Plaintiff and each member of the putative class also faces immediate and irreparable injury if RLI is permitted to breach that federal court order by disclosing to any third party the confidential information regarding undocumented immigrants stored on Libre by Nexus's computer systems and/or by allowing any third party access to that confidential information.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because the claims herein arise out of federal laws. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorney's fees, and costs; and (3) Plaintiffs and Defendants are domiciled in different states.

4.    The Court has personal jurisdiction over Defendants because they have sufficient minimum contacts with California to render the exercise of jurisdiction by this Court proper and fair. Defendants are licensed to do business in the State of California and do business in this judicial district, have an office in this judicial district, and have its registered agent in this judicial district.

5.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

6.    Plaintiff Jose Guzman is a 45-year-old Honduran national who entered this country 23 years ago to escape religious and political persecution. Plaintiff is a Pastor, and he now resides in Los Angeles County, California, with his wife and six (6) children.

7.    Defendants RLI Corp. and RLI Insurance Company (collectively "RLI") are Delaware corporations with their principal place of business in Peoria,

Illinois. RLI is licensed to do business in the State of California and does business in the State of California and in this County. According to RLI's latest SEC Form 10-K filing, "Although we operate in all 50 states, nearly 50 percent of our direct premiums earned were generated in four states in 2019: ***California – 16 percent***; New York – 14 percent: Florida – 10 percent; and Texas – 9 percent. An interruption in our operations, or a negative change in the business environment, insurance market or regulatory environment in one or more of these states could have a disproportionate effect on our business and direct premiums earned." (Italics added.)

8.    Plaintiff is unaware of the true names and capacities of Defendants sued herein as Does 1-10, inclusive ("Doe Defendants"), and therefore sues these Doe Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of said Doe Defendants when ascertained. Plaintiff is informed and believes that at all relevant times mentioned herein, each of the fictitiously-named Doe Defendants is culpable or responsible in some manner and/or conspired with one or more of the other Defendants for the conduct, acts, omissions, occurrences, injuries, and damages herein alleged, and that Plaintiff's injuries and damages were directly and proximately caused thereby.

## CLASS ACTION ALLEGATIONS

9.    The claims alleged herein arise from a breach of a federal court order and from RLI's disclosure on PACER of login credentials to computer systems that contain personal and confidential information of Plaintiff and all other Libre by Nexus Program Participants. As a matter of law, such claims are suitable for nationwide and statewide class action treatment.

10.    Plaintiffs bring this suit as a class action on behalf of themselves and all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), as representatives of:

11.    Plaintiff's proposed class consists of and is defined as follows:

**Nationwide Class:**

All persons who are Program Participants of Libre by Nexus.

**California Sub-Class:**

All persons who are Program Participants of Libre by Nexus and who are California residents.

12.    Members of the Nationwide Class and the California Sub-Class are referred to herein as the "Class" or as "Class Members." Plaintiffs reserve the right to redefine the Class and to add subclasses as appropriate, based upon further investigation, discovery, and specific theories of liability.

13.    There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including but not limited to:

a.    Whether RLI may access personal and confidential information concerning Program Participants;

b.    Whether RLI may disclose to third parties any personal and confidential information concerning Program Participants;

c.    Whether RLI may provide to third parties the ability to access any personal and confidential information concerning Program Participants;

d.    Whether RLI's conduct constitutes a violation of the federal Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*;

e.    Whether RLI's conduct constitutes a violation of the federal Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*;

f.    Whether RLI's conduct constitutes a violation of California's Constitutional right to privacy, Cal. Const. Art. 1, § 1;

CLASS ACTION COMPLAINT

g.    Whether RLI's conduct constitutes a violation of California's Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100 *et seq.*;

h.    Whether the Class is entitled to a judgment enjoining RLI from accessing or disclosing to any third party any personal or confidential information concerning Program Participants.

14.    The identity of the Class Members is readily ascertainable.

15.    There is a well-defined community of interest in the lawsuit as follows:

a.    Numerosity: The sizes of the Nationwide Class and the California Sub-Class are so numerous that joinder of all members would be neither feasible nor practical. The memberships of the Nationwide Class and the California Sub-Class are unknown to Plaintiffs at this time, but they are estimated to be greater than 100 individuals.

b.    Commonality and Typicality: Plaintiff's claims and defenses, if any, are typical of those of other Class Members, and the claims of all Class Members turn on the resolution of common questions concerning RLI's conduct as detailed above.

c.    Adequacy: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he has a well-defined community of interest and with whom they share common and typical claims. Plaintiff's attorney – the proposed class counsel – is well-versed in the rules governing class action discovery, certification, and settlement.

d.    Superiority: The nature of this lawsuit makes the use of the class action device superior to other methods of adjudication. A class action will achieve economies of time, effort and expense – both

for the parties and for the courts – as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire Class.

## THE IMMIGRATION PROCESS

16.     The Secretary ("Secretary") of the Department of Homeland Security ("DHS") has been given authority and powers pursuant of the Immigration and Nationality Act (INA). Specifically, 8 U.S.C. §1103(a)(1) charges the Secretary with the administration and enforcement of the INA by promulgating regulations, procedures, and policies.

17.     One of the Secretary's enumerated powers is to prescribe the "bonds" used by detained asylum seekers attempting to bail out of Immigration and Customs Enforcement ("ICE") detention pending status determination. 8 U.S.C. §1103(a)(3). "Surety bonds," in turn, are regulated pursuant to 8 C.F.R. §103.6(a) and (b), and by Treasury Department laws and statutes.

18.     The Secretary's specific regulations concerning the administration of "asylum" are at 8 C.F.R. §208.1 *et seq.* Thereunder, when an asylum detainee enters at other than a port of entry, as many do, he or she may be released on a cash or surety bond, after a "risk classification assessment." At some later point, the detainee must present for himself or herself at an ICE administrative hearing to determine status.

## GENERAL ALLEGATIONS

19.     Travelling from his home country, Honduras, Plaintiff entered the United States in 1996. He married in the United States and has six (6) children, each of whom were born in the United States. Plaintiff's wife and children are American citizens.

20.     Plaintiff was arrested in 2011 for a minor traffic infraction and placed in the federal detention facility in Adelanto, California.

CLASS ACTION COMPLAINT

21.     Plaintiff sought asylum on the grounds that he had a "credible fear" of religious persecution if returned to Honduras.  In order to pass a credible fear exam, an immigrant must establish a "significant possibility" that he or she can establish in a hearing before an Immigration Judge that he or she has been persecuted or has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion if returned to his or her country. (*See* 8 U.S.C. § 1225(b)(1)(B)(iii)(v); 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158(b)(1)(B).)

22.     The heavy burden of establishing this "significant possibility" lies with the immigrant:

> The asylum applicant carries the burden of proving statutory "refugee" status. [Citation.] To establish asylum eligibility, the alien may, with specific and credible evidence, establish a "well-founded fear" that a statutorily listed factor will cause such future persecution. [Citations.] "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be ***singled out*** for persecution on account of [a statutory factor]." [Citation.] An applicant's fear of persecution must be both "subjectively genuine and objectively reasonable." [Citations.]

(*Pablo v. U.S. Atty. Gen.* (11th Cir. 2009) 343 Fed. Appx. 527, 528 (affirming order denying asylum). *See also Gueye v. U.S. I.N.S.* (2d Cir. 2005) 127 Fed. Appx. 526, 527 (affirming order denying asylum); *Wen Shin Lin v. Bureau of Citizenship & Immigration Services* (2d Cir. 2007) 233 Fed.Appx. 63, 64 (same); *Ying Huang v. Holder* (2d Cir. 2013) 538 Fed.Appx. 77, 79 (same); *Mehla v. U.S. Dept. of Homeland Security* (S.D. Cal. 2019) 424 F.Supp.3d 997, 1004 (same).)

23.     The credible fear exam is far from perfunctory:

> Credible fear interviews occur after an alien has, at an airport interview, "indicate[d] an intention to apply for asylum, or expresse[d] a fear of persecution or torture, or a fear of return to his or her country." 8 C.F.R. § 235.3(b)(4). Federal regulations require that all applicants who are referred from an airport interview to a credible fear interview be provided with a Form M–444, titled "Information About Credible Fear Interview." Id. § 235.3(b)(4)(i). This form describes:

(A) The purpose of the referral and description of the credible fear interview process;

(B) The right to consult with other persons prior to the interview and any review thereof at no expense to the United States Government;

(C) The right to request a review by an immigration judge of the asylum officer's credible fear determination; and

(D) ***The consequences of failure to establish a credible fear of persecution or torture.***

(*Zhang v. Holder* (2d Cir. 2009) 585 F.3d 715, 723, italics added.)

24.     In 2011, the federal government determined that Plaintiff had established a credible fear of persecution and allowed him to be released on bond as an immigrant lawfully in the United States until his asylum status is determined by a competent court of jurisdiction.

25.     Because Plaintiff passed his credible fear exam, federal law permits him to remain in the United States legally pending a determination of his request for asylum. But he was required to secure a $40,000.00 release bond in order to be released from detention. As detailed herein, the financial requirements to secure a release bond are incredibly difficult for an immigrant to meet— accordingly, Plaintiff remained in custody from 2011 until 2014 because he was unable to secure the bond required for his release.

26.     With the assistance of a company called Libre by Nexus, Plaintiff secured a release bond in 2014.

## PLAINTIFF'S RELATIONSHIP WITH LIBRE

27.     Libre by Nexus ("Libre") assists immigrants located throughout the country obtain release from detention by U.S. Immigration and Customs Enforcement ("ICE"). When an undocumented immigrant enters the United States and is detained by ICE, a family member or friend will contact Libre in the hope of engaging Libre's services in assisting to secure the release of their loved one from immigration detention.

*Reallaw*

28.    All Libre clients currently live in the United States. They contract with Libre in or near the city in which they were detained. Integral to the process of securing the release of an undocumented immigrant from ICE detention is the posting of a bond that allows for their release. These bonds can be as low as $1,500 and can be as high as $50,000 or more. The bond serves as a guarantee to the federal government that, once out of detention, the bonded individual will attend all immigration court hearings.

29.    Upon being contacted by a loved one, Libre finds out where the undocumented is being held (often the loved one does not have this information), contacts the undocumented immigrant on behalf of their loved one, and arranges to secure a bond for them. Libre then facilitates the immigrant's release.

30.    At all hours of the day or night, Libre picks up immigrants from the detention centers, many of which are remote, feeds them, and provides them with clothes and essential toiletries.  Clothing is particularly important in cold weather states in which immigrants are released in the same clothes they were arrested in (even if they were arrested in El Paso during a heat wave but detained in Buffalo during a cold snap) and are prohibited from reentering the facility once released.

31.    Libre also provides its clients, known as Program Participants, with a cell phone to contact their families and to facilitate their reentry into society.

32.    Frequently, Libre arranges for the transport of the immigrants released from ICE custody to their families.  This begins to provide some humanity back to the individuals after they have endured a process which utterly strips all humanity and dignity from them.

33.    Importantly, Libre does not post release bonds. Rather, it agrees to indemnify for a bonding company to post the immigration bond on behalf of the undocumented immigrant who becomes a Libre Program Participant.  This is important because bonding companies general require collateral in the full amount

of the bond as a prerequisite to posting the requisite bond, so Libre arranges to
indemnify the bonding company against loss on the bond.

34.    Libre thus provides critical services to immigrants who languish
in detention facilities, because they cannot afford to post immigration bonds.  Libre
provides guarantees for immigration bonds that are posted by third party licensed
bail bondsmen and secured by third party federally-approved insurance companies.

35.    Libre's program allows detained immigrants to post their bonds
and be reunited with their families without having to pay the full amount of their
bonds, and it allows immigrant detainees to secure release without requiring
collateral because Libre indemnifies sureties or bail agents from losses in writing
civil immigration bonds.  This is important because many immigrants languish in
ICE custody, at taxpayer expense, because traditional bonding models require 100%
of the face value of the bond in collateral in addition to a fee for the bondsman's
service.  Additionally, many of these companies require an annual renewal fee of
several thousand dollars.  A ten-thousand-dollar bond can cost a family upwards of
$11,000.00 at the time it is posted and thousands of dollars more over the life of the
bond.

36.    A number of Libre's Program Participants are people who have
come to the United Stated seeking asylum.  For example, many clients are escaping
a death sentence in their own country because they are former law enforcement,
military, are targeted minorities (such as indigenous people or members of the
LGBTQ community) or are fleeing gang violence. Thus, deportation for these
immigrants is often the equivalent of a death sentence.

37.    Unless immigrant detainees are able to post bonds, they are
required to live in detention centers that are increasingly unsafe and overcrowded.
In many instances, the detention centers are unlivable for extended periods of time.
The U.S. immigration system is overburdened and without necessary resources,
which results in radically prolonged incarceration rates for immigrants who cannot

CLASS ACTION COMPLAINT

post bond. Thousands of detained immigrants are languishing in these facilities at the taxpayer's expense.

38.    Again, unlike criminal proceedings, immigration detainees are generally required to post the full bond that is set before the detainee will be released, which makes the posting of immigration bonds extremely difficult for most undocumented immigrants, particularly as bond amounts can often exceed $25,000. Libre arranges for these immigration release bonds, and rather than paying the full amount of the bond, Libre's clients typically pay a bond premium of only 10-15% of the face value of the bond to the bondsman.

39.    Libre's monitoring program has proven to be wildly successful, with a failure to appear rate of less than 3%. This success rate is unheard of in the immigration or criminal bonding industries. This failure rate is all the more remarkable when one considers that Libre now serves more than 30,000 Program Participants.

40.    ***Libre's success is tied to the services it provides to its clients and the trust it develops with its clients. This trust leads Class Members to share with Libre personal and confidential information such as their date of birth and social security number or taxpayer identification number, their home address and cellphone number, the names of their spouses and children (including minor children), contact information of friends and family members, and in some cases information concerning criminal cases. Class Members also contact Libre and request assistance on a wide range of personal and financial issues such as financial needs and medical problems. This trust is of critical importance to Class Members – they know that they have entrusted Libre with information that could be used against them or their friends and family, to send them back home, in some cases to their death.***

41.    Plaintiff is informed and believes, and thereon alleges, that Libre keeps notes of Program Participant information and inquiries concerning highly

CLASS ACTION COMPLAINT

personal and confidential information, that RLI gained access to this personal and confidential information when it obtained the login credentials to Libre's computer systems, and that RLI unlawfully gave anyone with Internet access the ability to access Program Participants' personal and confidential information by disclosing on PACER the login credentials to Libre's computer systems.

## RLI's RELATIONSHIP WITH LIBRE

42.    There are a limited number of bonding companies that can post immigration bonds, and an even a smaller number of surety companies that can work with Libre. Even with Libre's agreement to fully indemnify the insurance companies if a Program Participant fails to voluntarily appear in court, insurance carriers are reluctant to secure civil immigration bonds because of the traditionally high rate of failure to appear by undocumented immigrants.

43.    RLI is one of the few insurance companies that is qualified to serve as federal sureties and that agreed to accept Libre's financial guarantees on behalf of the Class.

44.    As a surety, RLI required that Libre contractually agree to give it access to Libre records. During litigation between RLI and Libre in the United States District Court for the Western District of Virginia, Harrisonburg Division, in a case entitled *RLI Insurance Co. v. Nexus Services Inc., et al.*, Case No. 5:18cv66 (the "RLI-Libre Action"), RLI sought and obtained unfettered access to Libre's computer systems. The court order in the RLI-Libre Action, attached hereto as **Exhibit A**, required Libre disclose to RLI login credentials so that RLI would have unrestricted access to any and all information regarding Program Participants located anywhere on Libre's computer systems.

45.    Plaintiff's release bond was not from RLI.

46.    On September 8, 2020, RLI filed in the RLI-Libre Action a pleading, Docket No. 506 ("RLI's Illegal Filing"). Plaintiff is informed and believes, and based thereon alleges, that in order to file this pleading electronically

via PACER, RLI was required to review and acknowledge the following federal court requirement governing RLI's Illegal Filing:



47.    RLI disclosed to anyone with access to PACER the login credentials to Libre's computer systems, thus giving them access to Plaintiff's and the Class's personal and confidential information including dates of birth, names of minor children, home addresses, social security or taxpayer identification numbers, financial account information.

### FIRST CAUSE OF ACTION

### Injunctive Relief On Behalf Of Nationwide Class

48.    Plaintiff incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49.    By RLI's Illegal Filing, RLI has improperly and illegally and in violation of federal laws given access to anyone with access to PACER the personal and confidential information of Class Members.

50.    Accordingly, Plaintiff will seek a temporary restraining order in connection with seeking a preliminary injunction by this Court barring RLI from

accessing and from providing access or disclosing to any third party any personal and confidential information related to Class Members.

## SECOND CAUSE OF ACTION

### Injunctive Relief On Behalf Of California Sub-Class

51.     Plaintiff incorporates by reference paragraphs 1 through 50 as though fully set forth herein.

52.     By RLI's Illegal Filing, RLI has improperly and illegally and in violation of California laws given access to anyone with access to PACER the personal and confidential information of Class Members.

53.     Accordingly, Plaintiff will seek a temporary restraining order in connection with seeking a preliminary injunction by this Court barring RLI from accessing and from providing access or disclosing to any third party any personal and confidential information related to members of the California Sub-Class.

## THIRD CAUSE OF ACTION

### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

54.     Plaintiff incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55.     Under § 1030(a)(2)(C), "Whoever ... intentionally accesses a computer without authorization *or exceeds authorized access*, and thereby obtains ... information from any protected computer ... shall be punished" as provided in section (c) of the statute. 18 U.S.C. § 1030(a)(2)(C). A "protected computer" means a computer "which is used in interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B). "The term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

56.     Plaintiff was not bonded by RLI; accordingly, RLI was not entitled to access or obtain any personal or confidential information concerning him.

Moreover, as RLI's interest in inspecting Libre's records was in its sole capacity as surety—that is, to determine Libre's financial ability to comply with any demands on the bonds—RLI was not entitled to access or obtain any personal or confidential information concerning Class Members.

57. RLI separately violated the Computer Fraud and Abuse Act by knowingly and intentionally providing access to a protected computer to third parties not entitled to such access.

58. Pursuant to 18 U.S.C. § 1030(g) provides, "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."

59. Accordingly, in addition to the injunctive relief requested herein, Plaintiff and the Class seek compensatory damages against RLI for its violation of the Computer Fraud and Abuse Act.

## FOURTH CAUSE OF ACTION

**Violations of the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.***

**(On Behalf of the Nationwide Class)**

60. Plaintiff incorporates paragraphs 1 through 59 as though fully set forth herein.

61. The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* (the "ECPA") defines an "electronic communication" very broadly so as to encompass "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

62. The Stored Communications Act (the "SCA") incorporates the ECPA's definition of "electronic communication."

63.    Under both the ECPA and the SCA, "electronic storage" is defined as any "temporary storage of a wire or electronic communication incidental to the electronic transmission thereof," 18 U.S.C. § 2510(17)(A), and includes communications in intermediate electronic storage that have not yet been delivered to their intended recipient.

64.    In part, Congress enacted the SCA in order to prevent "unauthorized persons [from] deliberately gaining access to … electronic or wire communications that are not intended to be available to the public." Senate Report No. 99-541, S. REP. 99-541, 35, 1986 U.S.C.C.A.N. 3555, 3589.

65.    By securing login credentials to Libre's computer systems, RLI gained access to electronic or wire communications between Libre and the Class that are not intended to be available to the public.

66.    Additionally, RLI violated 18 U.S.C. § 2701(a)(2) because it did not have the authorization of Class Members to access their communications and obtained access to a wire or electronic communication while in electronic storage by collecting data from the stored files on Libre's computer systems, despite the fact that the Class did not want RLI to have access to that information and had not consented to RLI obtaining access to that information.

67.    RLI violated the SCA for its commercial advantage and to its private commercial gain.

68.    RLI separately violated the SCA by knowingly and intentionally providing access to a protected computer to third parties not entitled to such access.

69.    As a result of RLI;s conduct, Plaintiff and the Class Members have suffered injury and seek a judgment awarding Plaintiff and the Class Members the maximum statutory and punitive damages available under 18 U.S.C. § 2707.

CLASS ACTION COMPLAINT

**FIFTH CAUSE OF ACTION**

**Violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.***

**(On Behalf of the Nationwide Class)**

70.    Plaintiff incorporates paragraphs 1 through 69 as though fully set forth herein.

71.    As noted above, the ECPA defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce..." 18 U.S.C. § 2510(12).

72.    The ECPA further defines an "electronic communications system" as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(14).

73.    Finally, under the ECPA the "contents" of a communication includes any information concerning the substance of that communication, 18 U.S.C. § 2510(8), as well as any information concerning the identity of any of the parties to the communication. Congress's ultimate goal was to comprehensively protect the privacy of communications, so no aspect of such communications is excluded.

74.    RLI violated 18 U.S.C. § 2511(1)(a) because it intentionally accessed Plaintiff's and Class Members' electronic communications with Libre without the consent of Plaintiff or the Class.

75.    RLI violated 18 U.S.C. § 2511(1)(d) because it intentionally used and endeavored to use the electronic communications between Plaintiff and the Class, on the one hand, and Libre, on the other, for its own commercial advantage

1  and private commercial gain, and knew or should have known that such information

2  had been obtained in violation of 18 U.S.C. § 2511(1).

3      76.    RLI intentionally obtained and intercepted the electronic

4  communications without the knowledge, consent or authorization of Plaintiff or the

5  Class.

6      77.    RLI separately violated the ECPA by knowingly and

7  intentionally providing access to a protected computer to third parties not entitled to

8  such access.

9      78.    Plaintiff and the Class suffered harm as a result of RLI's

10  violations of the ECPA, and seek (a) preliminary, equitable and declaratory relief as

11  warranted, (b) the greater of the sum of the actual damages suffered by the Class and

12  the profits realized by RLI as a result of its unlawful conduct, or statutory damages

13  as authorized by 18 U.S.C. § 2520(2)(B), (c) punitive damages, and (d) reasonable

14  attorneys' fees and costs.

### SIXTH CAUSE OF ACTION

**Invasion of Privacy, Cal. Const. Art. 1, § 1**

**(On Behalf of the California Subclass)**

18      79.    Plaintiff incorporates paragraphs 1 through 78 as though fully set

19  forth herein.

20      80.    California's Constitution recognizes an express right to privacy.

21  Cal. Const. Art. 1, § 1.

22      81.    Plaintiff and the California Sub-Class had a legally recognized

23  privacy interest in their communications with Libre.

24      82.    RLI's conduct constitutes a serious invasion of the privacy rights

25  of Plaintiff and the California Sub-Class.

26      83.    RLI's conduct, and particularly its disclosure of Libre's login

27  credentials to anyone with access to PACER thereby providing any third party with

28  unfettered access to Plaintiff's and the California Sub-Class's personal and

confidential information, was not justified by any legitimate or important competing interest.

84.    RLI violated Plaintiff's and the California Subclass Members' right to privacy.

85.    On behalf of Plaintiff and the California Subclass Members, Plaintiff seeks damages in an amount to be determined at trial for himself and each member of the California Subclasses.

## SEVENTH CAUSE OF ACTION

**Violations of California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100 *et seq.***

**(On Behalf of the California Subclass)**

86.    Plaintiff incorporates paragraphs 1 through 85 as though fully set forth herein.

87.    California's Consumer Privacy Act ("CCPA") recently was enacted to protect consumers' personal information from collection and use by businesses without appropriate notice and consent.

88.    Through the above-detailed conduct, RLI violated the CCPA by, inter alia, collecting and using personal information without providing consumers with notice consistent with the CCPA, in violation of Civil Code section 1798.100(b) and section 1798.115(d), and by otherwise failing to inform the California Sub-Class of the personal information collected about them, and by sharing access to that personal information with third parties, in violation of Civil Code section 1798.110(c).

89.    RLI also violated the CCPA by failing to prevent Plaintiffs' and Class members' nonencrypted and nonredacted personal information from unauthorized disclosure as a result of RLI's failure to comply with the Redaction Agreement required by PACER and federal laws, in violation of Civil Code section 1798.150(a). By RLI's Illegal Filing, anyone with access to PACER was given

access to Plaintiff's and the California Sub-Class's personal and confidential information. This widespread, unauthorized dissemination of Plaintiffs' and Class members' personal and confidential information is exactly what the CCPA intended to make actionable.

90.     On behalf of himself and the California Sub-Class, and in addition to the injunctive relief sought herein, Plaintiff seeks actual, punitive, and statutory damages, attorneys' fees and costs, and any other relief the Court deems proper as a result of RLI's CCPA violations.

WHEREFORE, Plaintiff prays for judgment as follows:

## **PRAYER FOR RELIEF**

1)     Certifying this action for nationwide class treatment, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

2)     Certifying this action for California subclass treatment, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

3)     Enjoining RLI from accessing and from providing access or disclosing to any third party any personal and confidential information related to Class Members;

4)     Enjoining RLI from accessing and from providing access or disclosing to any third party any personal and confidential information related to California's Sub-Class Members;

5)     Awarding actual damages, statutory damages and/or restitution, including pre-judgment interest, on each count in an amount to be determined at trial;

6)     Imposing punitive damages on RLI in an amount sufficient to penalize and deter its wrongful conduct;

7)     Awarding reasonable attorneys' fees and costs of litigation; and

CLASS ACTION COMPLAINT

1    8)    Granting such other relief as the Court may deem just and

2  proper.

3              **DEMAND FOR JURY TRIAL**

4         Plaintiff requests a jury trial for any counts for which a trial by jury is

5  permitted by law.

6

7  DATED:  September 10, 2020        REALLAW, APC

8

9                              By: _____/s/ Michael J. Hassen_____

10                                  Michael J. Hassen

11                                  Attorneys for Plaintiff JOSE GUZMAN,
                                    on behalf of himself and all others similarly

12                                  situated

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28